UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAMRYN RANDLE,

    Plaintiff,

v.

LADEL LEWIS et al.,

    Defendants.

_____/

Case No. 23-cv-11370

HON. MARK A. GOLDSMITH

**OPINION & ORDER
GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 25)**

Plaintiff Kamryn Randle brought this case against five members of the Flint City Council, the Flint City Attorney, and a Flint police officer, based on events arising at a Flint City Council meeting in June 2023. She alleges First Amendment claims as well as state-law claims for negligence, violation of the Michigan Open Meetings Act, and assault.

Before the Court is Defendants' motion for summary judgment (Dkt. 25).[1] For the reasons stated below, the Court grants the motion.

### I. BACKGROUND

Randle, a resident of Flint, Michigan, attended a Flint City Council meeting held on June 5, 2023. Am. Compl. ¶¶ 19–20 (Dkt. 22). She began videorecording the meeting as part of her role as support staff for Councilman Eric Mays and his attorneys. Id. ¶ 20. The City Council has uploaded its own recording of the June 5, 2023 meeting to its YouTube channel. Am. Compl. ¶

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to the motion, the briefing includes Randle's response (Dkt. 29) and Defendants' reply (Dkt. 30).

While this motion was filed and labeled as a motion to dismiss, as the Court stated in its September 11, 2023 Order, it will treat Defendants' motion as a motion for summary judgment, as the motion relies on matters outside of the pleadings. See 9/11/23 Order (Dkt. 24).

1

24 (citing 060523-Flint City Council-Budget Adoption, available at https://www.youtube.com/watch?v=OmRCFtoOMlA).

During the meeting, Defendant Eva Worthing, a member of the City Council, requested that Randle turn off the light on her camera, as Worthing was sensitive to the light. Am. Compl. ¶¶ 24–25; Meeting Tr. at PageID.596–597 (Dkt. 25-4). According to Randle, the light at issue was an operational light, indicating that the camera was turned on and recording. Am. Compl. ¶ 27. She did not know how to turn it off and so did not do so. Id. ¶ 28. As described in the amended complaint—and as is apparent from the meeting transcript—members of the City Council engaged in a heated argument regarding whether Randle should be required to turn off the camera light. Id. ¶¶ 24–80; Meeting Transcript at PageID.596–598, PageID.601–618. A member of Lento Law Group, P.C., a firm hired by Councilman Mays, also engaged in the dispute, as did Defendants Kim (the Flint City Attorney) and Metcalfe (a Flint police officer). Am. Compl. ¶¶ 32, 41–42.

Eventually, Defendant Ladel Lewis, chair of the City Council, directed Randle to turn off her camera light or be removed from the meeting. Id. ¶ 38; Meeting Tr. at PageID.612–613. The Council voted to support that direction by a 5-3 majority vote. Meeting Tr. at PageID.616–617. Immediately thereafter, the meeting was adjourned by a 5-2 majority vote. Id. at PageID.616–618.

While the parties agree that Randle was able to record for more than three hours of the meeting, Am. Compl. ¶ 37; Mot. at 16, they disagree over whether Randle was able to record the full meeting. Randle argues that she was not permitted to record the end of the meeting. See Resp. at 17–18. Defendants disagree. See Mot. at 10.

The record is not entirely clear on the subject. Before the vote to require Randle to turn the light off or leave the meeting, Councilman Murphy stated that Randle had "turned the light off" but that she was "still able to record," so it is possible she had turned her camera off at that

2

point. Am. Compl. ¶ 63; Meeting Tr. at PageID.608. But by the time of the vote, her camera may have been back on. The transcript also shows that the meeting was adjourned immediately after the vote to require Randle to stop recording. Meeting Tr. at PageID.617–618. If she turned her camera off after the vote requiring her to do so, the only portion of the meeting she would have missed would have been the vote to adjourn. And according to video footage cited by Defendants, Randle's camera light was still on after the meeting was adjourned. Mot. at 42 (citing Metcalfe Body Cam Video at 13:20–15:00) (Dkt. 19-3).

The Court need not decide the factual question of whether Randle was actually prevented from videorecording any portion of the meeting, as the Court finds that the fact is not material to the outcome of her federal claims.

## II. ANALYSIS[2]

The Court first addresses Randle's claim that Defendants violated her First Amendment access and freedom of expression rights, and then turns to her 28 U.S.C. § 1985 conspiracy claim. Because the Court finds that all of Randle's federal claims must be dismissed, it will decline to exercise supplemental jurisdiction over her state-law claims.

### A. First Amendment Freedom of Access Claim

Randle claims that Defendants violated her access rights under the First Amendment. See Am. Compl. ¶¶ 91–131. The parties do not dispute that Randle had a right to access the legislative proceedings. Rather, they disagree as to whether that right of access protects Randle's ability to videorecord the City Council meeting. Defendants argue that the Court should dismiss

---

[2] In assessing whether a party is entitled to summary judgment, the Court applies the traditional summary judgment standard as articulated in Scott v. Harris, 550 U.S. 372, 380 (2007). A court will grant a motion for summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant makes an initial showing that there is an absence of evidence to support the nonmoving party's case, the nonmovant can survive summary judgment only by coming forward with evidence showing there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324–325 (1985).

3

this claim because (i) preventing a person from recording a meeting does not violate the First Amendment right of access where alternative means of access exist and, alternatively, (ii) Defendant's actions are permissible under the test established by the Sixth Circuit in S.H.A.R.K. v. Metro Parks Serving Summit Cnty., 499 F.3d 553 (6th Cir. 2007) for evaluating freedom of access claims. The Court agrees with Defendants on both grounds and finds no right of access violation.

The right of access springs from "the common understanding that a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs" and "to ensure that this constitutionally protected 'discussion of government affairs' is an informed one." Globe Newspaper Co. v. Sup. Ct. for Norfolk Cnty., 457 U.S. 596, 604–605 (1982) (punctuation modified). It exists where (i) "the place and process has historically been open to the press and general public" and (ii) "public access plays a significant positive role in the functioning of the particular process in question." Capital Cities Media, Inc. v. Chester, 797 F.2d 1164, 1174 (3rd Cir. 1986) (punctuation modified).

But the "First Amendment does not require unfettered access to government information." Whiteland Woods, L.P. v. Twp. of West Whiteland, 193 F.3d 177, 182 (3rd Cir. 1999)). Courts have held that it "'does not require states to accommodate every potential method of recording its proceedings, particularly where the public is granted alternative means of compiling a comprehensive record.'" Maple Heights News v. Lansky, No. 1:15-cv-53, 2017 WL 951426, at *3 (N.D. Ohio Mar. 10, 2017) (quoting Whiteland Woods, 193 F.3d at 183).

Here, Randle was granted both access to the meeting and "alternative means of compiling a comprehensive record." Id. Randle does not argue that she was prevented from attending the meeting, nor does the record bear that out. She also acknowledges that the City Council recorded the meeting, a recording she could have watched on the Council's YouTube channel after the meeting's conclusion. Am. Compl. ¶ 24. If she was unable to continue recording on

4

her camera without the light, she could have used a different device, such as a smartphone. Alternatively, she could have recorded audio only, or she could have taken notes. Because Defendants did not prevent Randle from attending, observing, or recording the proceedings through other means, they have not violated the First Amendment's right of access. See Whiteland Woods, 193 F.3d at 184 (finding no First Amendment right of access violation where video recording was prohibited during planning commission meetings but where plaintiff "was allowed to attend all the meetings . . . and to compile a full record of the proceedings, whether by written and stenographic notes or audiotaping").

Because Randle claims an impingement of her effort to record public proceedings, the analytical framework set out in S.H.A.R.K. may be applicable—although the end result is the same. In S.H.A.R.K., the Sixth Circuit upheld a metropolitan park district's removal of cameras that an interest group had placed in a park to record planned deer culling, by applying a four-part test:

> First, we ask what rule the government is invoking that prohibits the plaintiffs from access to information, and whether that rule selectively delimits the audience . . . . Second, we inquire into the government's stated interest for invoking the rule. Third, we apply the applicable test to determine whether the government's stated interest is sufficiently related to the means of accomplishing that interest: if the rule does not selectively delimit the audience, we uphold the restriction if it is reasonably related to the government's interest; if the rule does selectively delimit the audience, a stricter level of scrutiny will apply.

499 F.3d at 560–561 (punctuation modified). The test has been used in other cases involving restrictions on recording matters of public concern. See McKay v. Federspiel, No. 14-cv-10252, 2014 WL 1400091, at *6 (E.D. Mich. Apr. 10, 2014) (upholding a county court's decision to prohibit the use of electronic equipment inside a courtroom where the public was able to attend, observe, and disseminate information learned from courtroom proceedings).

Here, the alleged access restriction by the Council passes the S.H.A.R.K. test. First, the rule Defendants invoked in this case was the City Council's rule against disorderly conduct.

5

Mot. at 15–16. This rule does not, by its terms, selectively delimit the audience. Nor has Randle made any genuine showing of selective limitation of an audience.[3] Second, the City Council's interest in invoking the rule is to maintain order during the meeting. During the hearing, Defendants noted that the light was disrupting the meeting, as Worthing kept having to leave her seat. See Meeting Tr. at PageID.609. And third, the City Council's actions were reasonably related to the government's interest—the appropriate test here because the rule does not selectively delimit. The limitation at issue here—requesting that Randle turn off the light on her camera, even if it resulted in her having to stop recording—was narrowly tailored to address the problem the recording device created—the light causing harm to Worthing. The City Council's action did not prohibit attendance, note-taking, audio recording, or even video recording, provided it did not disrupt the meeting.

### B. First Amendment Freedom of Expression Claim

Randle also claims a violation of her First Amendment right to freedom of expression. See Am. Compl. ¶¶ 132–160. She alleges that she intended to disseminate her videorecording online, but was prevented from doing so when she was made to stop recording the meeting. Id. ¶¶ 139–140. Defendants argue that Randle's freedom of expression claim fails because: (i) her freedom of expression claim is wholly derivative of the alleged access restriction; and (ii) her freedom of expression claim fails on the merits. Mot. at 23–24. While Randle's First Amendment claim is more appropriately addressed as a freedom of access claim, her freedom of

---

[3] Randle claims that other people in the meeting were recording and were not ejected. Resp. at 17. But Randle supplies no facts showing that those devices created the kind of annoyance that her device did. The only detail regarding prior cameras recording with lights that can be found in the record is a councilwoman's statement during the meeting that television cameras had been used in the past with "huge" lights. Meeting Tr. at PageID.606. But Randle makes no showing that a "huge" light creates the kind of annoyance that a smaller, more focused light can produce when the light beam interferes with the vision of persons present. Thus, Randle has not shown that the rule's enforcement was selective.

expression claim also fails on the merits.

When evaluating a freedom of expression claim, the Court first considers whether the speech is protected under the First Amendment. If it is, the Court next ascertains whether the applicable forum is public or nonpublic, before applying the appropriate standard for the forum to determine whether the probation on speech passes muster under the First Amendment. Parks v. City of Columbus, 395 F.3d 643, 647 (6th Cir. 2005).

Defendants are correct that courts in this circuit have generally evaluated right to record cases under the right of access, as opposed to freedom of expression. In S.H.A.R.K., for example, the Sixth Circuit evaluated the right to videorecord as being protected by the First Amendment's right of access guarantee. S.H.A.R.K., 499 F.3d at 559. In McKay, 2014 WL 1400091, the Court rejected the parties' contention that the right to record raises a constitutional issue of freedom of expression, citing the S.H.A.R.K. opinion as "clarif[ying] . . . that a member of the public's right to record involves the First Amendment right to access information, not freedom of expression." Id. at *10.

While Randle's claim is more appropriately evaluated under the right of access standard, "there is a growing trend of courts adopting the view that video recording is indeed speech for First Amendment purposes." Knight v. Montgomery Cnty., 470 F. Supp. 3d 760, 766 (M.D. Tenn. 2020) (collecting cases). Therefore, the Court will also consider Randle's freedom of expression claim on the merits.

The Sixth Circuit has explained that a City Council meeting is "a 'designated' and 'limited' public forum: 'designated' because the government has intentionally opened it for public discourse, and 'limited' because the State is not required to allow persons to engage in every type of speech in the forum." Youkhanna v. City of Sterling Heights, 934 F.3d 508, 519 (6th Cir. 2019) (punctuation modified). When a forum is a designated and limited public forum, "the government may regulate the time, place and manner of speech so long as the regulation is

7

(1) content neutral, (2) narrowly tailored to serve a significant government interest and (3) leaves open ample alternative channels for communication of the information." Lowery v. Jefferson Cty. Bd. of Educ., 586 F.3d 427, 432 (6th Cir. 2009) (punctuation modified).

Here, there is no evidence that Defendants' decision to require Randle to either turn off her camera light or leave the meeting was not content-neutral, as it was based on the effect the light was having on Worthing. The action was also narrowly tailored, despite Randle's arguments that the easiest and least restrictive way to accommodate both Worthing's medical issue and Randle's First Amendment rights would have been for Worthing to move. Resp. at 18. But "the requirement of narrow tailoring is satisfied so long as the regulation promotes a substantial government interest that would be achieved less effectively absent the regulation, and does not burden substantially more speech than is necessary to further the government's legitimate interests." Tucker v. City of Fairfield, 398 F.3d 457, 463 (6th Cir. 2005) (punctuation modified). The narrow tailoring requirement is satisfied here: the rule against disorderly conduct promotes the City Council's ability to effectively run its meetings, and its application did not burden substantially more speech than is necessary to further that interest, as Randle was permitted to record the meeting by other means. A person recording a council meeting has no First Amendment right to force public officials to change their seating arrangements.

Finally, Defendants left open ample alternative channels for communication of the information. They posted a livestream as well as a recording of the meeting to the City Council's YouTube channel. Randle argues that the difference between the video she was creating and the video available on the City Council YouTube channel is that "the YouTube video is concentrated on one camera angle." Resp. at 17. But the test requires only "ample alternative channels," not an identical alterative channel. Randle has not persuaded the Court that being able to disseminate her video, with a different angle, would make a meaningful difference.

8

### C. Conspiracy Claim Under § 1985

Randle also claims a conspiracy under 28 U.S.C. § 1985, alleging that Defendants conspired to deprive her of her First Amendment rights. See Am. Compl. ¶¶ 161–169. As explained above, the Court finds no First Amendment violation. Therefore, there can be no § 1985 conspiracy. See Rodrigues v. Martin Marietta Corp., Master Builders Div., 829 F.2d 39 (6th Cir. 1987) (holding that, where the plaintiff could not establish a violation of any federal right, he had no basis for a conspiracy claim under § 1985).[4]

### D. State-Law Claims

Because the Court grants Defendants' motion to dismiss as to the federal claims, the Court will use its discretion to decline to exercise supplemental jurisdiction over the remaining state-law claims by dismissing these claims without prejudice. 28 U.S.C. § 1367(c)(3); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726–727 (1966) ("[I]f the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.").

### III. CONCLUSION

For the reasons explained above, the court grants Defendants' motion for summary judgment (Dkt. 25).

SO ORDERED.

Dated: September 25, 2024  s/Mark A. Goldsmith
    Detroit, Michigan  MARK A. GOLDSMITH
  United States District Judge

---

[4] Because the court finds that Randle cannot establish any violations of federal law, it need not address Defendants' arguments that they are entitled to legislative and qualified immunity.